IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MISSOURI
CENTRAL DIVISION


STEVEN HILTIBRAN, et al.,           )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )      Case No. 10-4185-CV-C-NKL
                                    )
RONALD J. LEVY, et al.,             )
                                    )
            Defendants.             )


**ORDER**

Plaintiff Nena Hammond and, by and through their guardians or next friend,

Plaintiffs Steven Hiltibran, Nicholas Tatum, and Ronald Coontz, seek declaratory and

injunctive relief against Defendants Ronald J. Levy, in his official capacity as Director of

the Missouri Department of Social Services, and Ian McCaslin, in his official capacity as

Director of the MO HealthNet Division, to enjoin them from denying Medicaid coverage

of Plaintiffs' incontinence supplies.  Pending before the Court is Plaintiffs' Motion for

Summary Judgment.  [Doc. # 32].  Oral arguments were presented to the Court on May

24, 2011.  [Doc. # 41].  For the following reasons, the Court GRANTS the motion.

I.     **Factual and Procedural Background**

       As a preliminary matter, the Court notes that Defendants admit to the entirety of

Plaintiffs' statement of uncontroverted material facts, and offer no additional facts for the

1

Court's consideration. [Doc. # 37, at 2-3].

The Court previously granted Plaintiffs' Motion for Preliminary Injunction [Doc. # 28]) enjoining Defendants from denying Medicaid coverage for Plaintiffs' adult incontinence supplies. On or about January 14, 2011, in response to the Preliminary Injunction Order, MO HealthNet, which is Missouri's Medicaid program, promulgated the following:

Notice Concerning Adult Incontinence Briefs

> Please be advised that a preliminary injunction order was issued on December 27, 2010, by a Missouri U.S. District Court in *Hiltibran v. Dep't of Social Services*, Case No. 10-4185-CV-C-NKL, wherein the court enjoined the Department from refusing to provide adult incontinence briefs to those MO HealthNet participants over 21 years of age on the basis that such briefs are hygiene items. As such, if a prescriber believes that such adult incontinence briefs are medically necessary for the MO HealthNet participant, they should utilize the Department's exceptions process for requesting authorization. During the preliminary injunction, these requests will be granted upon a determination of medical necessity. If you have any questions or need assistance, please contact the MO HealthNet Exceptions Unit at 1-800-392- 8030, option 2.

MO HealthNet Division, Department of Social Services, Notice Concerning Adult Incontinence Briefs, *available at* http://dss.mo.gov/mhd/general/pdf/notice.pdf. At issue before the Court is whether Plaintiffs are entitled to a permanent injunction as a matter of law.

Missouri's Medicaid program, known as MO HealthNet, provides health services only to the "categorically needy," which includes Plaintiffs. 42 U.S.C. § 1396a(a)(10)(A); Mo. Rev. Stat. § 208.151. Missouri has designated the Missouri

Department of Social Services ("DSS") as the single state agency responsible for administering MO HealthNet.

Defendant Ronald J. Levy is the Director of DSS and, as such, is responsible for the general administration and implementation of laws concerning the social welfare of the people of the State of Missouri, including the Medicaid program. Mr. Levy is the chief administrative officer of DSS and is responsible for administration of the single state agency for the Missouri Medicaid program. Mr. Levy is charged with the ultimate control and administration of DSS, including the duty to administer the Missouri Medicaid program in compliance with the Medicaid Act, the Americans with Disability Act ("ADA"), and section 504 of the Rehabilitation Act. Defendant Ian McCaslin, M.D., is the Director of MO HealthNet, a division of DSS, and, as such, is responsible for the administration of the Missouri Medicaid program, with the exception of determination of eligibility for the program. Mr. McCaslin holds ultimate administrative power within the MO HealthNet Division subject to the supervision of Mr. Levy.

Plaintiffs range in age between 22 and 49, and are all disabled, low-income Missouri residents who are incontinent of both bladder and bowel due to their disabilities. Plaintiffs' physicians have determined that incontinence briefs are medically necessary for Plaintiffs to prevent skin deterioration and infections and to maintain Plaintiffs' ability to live in the community. Physicians from the Washington University School of Medicine and the St. Louis University School of Medicine have opined that failure to use

disposable diapers, or not changing disposable diapers often enough, can lead to sepsis (sometimes leading to septic shock and death), yeast infections, staph infections, a higher risk for developing skin cancer, and a higher susceptibility to genital warts and human papillomavirus. Prior to reaching age twenty-one, three of the plaintiffs–Mr. Hilitbran, Mr. Coontz, and Mr. Tatum–already had a medical need for adult diapers. These plaintiffs' medical conditions did not change or improve after turning twenty-one. Missouri provides coverage of incontinence briefs to participants between ages four and twenty. Mo. Code Regs. Ann. tit. 13, § 70-60.010; [Docs. # 5-6, DSS, Provider Bulletin, Vol. 31, No. 52, March 6, 2009 (incontinence briefs listed under "Physician and Durable Medical Equipment"); # 5-7, Missouri Durable Medical Equipment Provider Manual, § 13.22.B (incontinence briefs are "covered for participants age 4 through 20" when there is a medical condition causing incontinence and the briefs are prescribed)]. The per diem provided by the Missouri Medicaid program to those age twenty-one and over who reside in institutional settings, such as nursing homes, can be used to cover incontinence briefs. Mo. Code Regs. Ann. tit. 13, § 70-10.005, Appx. (listing "incontinency pads and pants" under "routine covered medical supplies and services"); § 70-10.010, Appx. A (listing "incontinency care" (including pads, diapers and pants) under "covered supplies & services").

For services that are not normally covered by the Missouri Medicaid program, the program uses an "Exceptions Process." The Exceptions Process is only available for

items that the Missouri Medicaid program considers to be essential medical services or items that would otherwise exceed the limitations of the Missouri Medicaid program. § 70-2.100. The Exceptions Process allows for exceptions to be made on a "case by case basis to limitations and restrictions" on the receipt of benefits in the Missouri Medicaid program. *Id*. Exceptions may be granted under this process only if one or more of the following conditions are met: (1) The item or service is required to sustain the recipient's life; (2) The item or service would substantially improve the quality of life for a terminally ill patient; (3) The item or service is necessary as a replacement due to an act occasioned by violence of nature without human interference such as a tornado or flood; or (4) The item or service is necessary to prevent a higher level of care. § 70-2.100.

When Mr. Hiltibran, Mr. Coontz, and Mr. Tatum turned twenty-one, DSS refused their claims for coverage of their incontinence supplies on grounds that their incontinence briefs are personal hygiene items. This decision was made despite documentation submitted to MO HealthNet by their physicians that they had a continuing medical need for adult diapers. As a result of these policies, these plaintiffs lost Medicaid coverage of their incontinence supplies upon turning twenty-one because they did not live in nursing homes and were denied coverage through the state's Exceptions Process. Ms. Hammond, residing in the community and being over twenty-one years old when she became incontinent due to her disabilities, has never received Medicaid coverage for her incontinence supplies.

One plaintiff, Steven Hiltibran, has qualified for the new Prevention Waiver for individuals with severe developmental disabilities, and receives coverage for his incontinence supplies through this program, which serves a maximum of 399 individuals statewide.  Mr. Hiltibran's continued receipt of waiver benefits is not guaranteed.  Mr. Hiltibran has requested that his incontinence supplies also be covered under MO HealthNet's interim policy.  The remaining three plaintiffs were unable to obtain placement in a waiver program despite seeking help from various State agencies and case managers.  These plaintiffs now receive coverage pursuant to MO HealthNet's interim policy implementing the Court's Preliminary Injunction Order.

When they did not receive Medicaid coverage for incontinence supplies, Plaintiffs and their families struggled to pay for these supplies, and have endured financial hardship and emotional stress due to the cost of adult diapers.  Ms. Hammond, for example, re-wears used diapers and foregoes other basic necessities in order to pay for them.  She has already suffered from multiple skin infections.  The monthly cost of incontinence briefs for Plaintiffs ranges from 2% to 43% of their monthly income.

The typical cost of caring for a single person in a nursing home is over $40,000 a year, or over $3,333 monthly.  None of Plaintiffs' treating professionals recommend institutionalizing them in nursing homes.

Plaintiffs filed this lawsuit for declaratory and injunctive relief to enjoin Defendants from denying Medicaid coverage of their medically necessary incontinence

supplies and thereby violating federal Medicaid and disability discrimination mandates.

Plaintiffs also seek a fair process by which they can establish the medical necessity of

adult diapers. Plaintiffs contend that Defendants violate the Medicaid Act because their

standards for determining whether a participant's incontinence briefs are covered are

unreasonable, 42 U.S.C. § 1396a(a)(17), and because they deny "home health services,"

to Plaintiffs which includes incontinence briefs. 42 U.S.C. §§ 1396a(a)(10)(A);

1396d(a)(4)(A). Plaintiffs also assert that Defendants violate the integration mandate of

the ADA, 42 U.S.C. §§ 12131-12165, and section 504 of the Rehabilitation Act, 29

U.S.C. §§ 701, et seq., by requiring Plaintiffs to be institutionalized before MO HealthNet

covers the cost of their briefs.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party "bears the initial responsibility of informing the district court of the

basis for its motion" and must identify "those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the

non-moving party to respond by submitting evidentiary materials that designate "specific

facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

### B. Permanent Injunctive Relief

The standard for determining whether a permanent injunction should issue is essentially the same as the standard for issuing a preliminary injunction. *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing *Amoco Prods. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). To determine whether preliminary injunctive relief is warranted, the Court considers: 1) the likelihood of success on the merits, 2) the threat of irreparable harm to the movant absent injunctive relief; 3) the balance between this harm and the harm to the nonmoving party should the injunction issue; and 4) the public interest. *Fogie v. THORN Ams., Inc.*, 95 F.3d 645, 654 (8th Cir. 1996) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "The standard is the same for a permanent injunction except that the movant must show actual success on the merits." *Amoco Prods. Co.*, 480 U.S. at 546 n.12.

Here, the parties contest only one factor–actual success on the merits. As such, and as the Court does not find any evidence to counsel otherwise, the Court adopts its prior

finding in the Preliminary Injunction Order that Plaintiffs have established that they will suffer irreparable harm without an injunction, that the balance of the hardship tips in their favor, and that an injunction is in the public interest. Thus, the Court's discussion here focuses on whether Defendants' policy violates the "reasonable standards" requirement of the Medicaid Act, and the integration mandate of the ADA and section 504 of the Rehabilitation Act. The Court stresses that Plaintiffs do not contend that Missouri's State Plan, as written, contains provisions that violate federal law. Rather, it is Defendants' policy of deeming incontinence briefs to be "personal hygiene" items when they are used by individuals over the age of twenty–which the State Plan does not address–that Plaintiffs wish to enjoin.

The Court notes that it previously found that Plaintiffs were likely to succeed on the merits of their claims. For the following reasons, the Court now finds that Plaintiffs have demonstrated actual success on the merits.

### 1. Plaintiffs' "Reasonable Standards" Claim

In choosing to participate in the Medicaid program and receive federal matching funds, Missouri is bound to comply with federal legislation and regulation. *See Blum v. Bacon*, 457 U.S. 132, 145-46 (1982); *Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006) (citing *Meyers v. Reagan*, 776 F.2d 241, 243-44 (8th Cir.1985). Although federal law does not require Missouri to provide coverage of durable medical equipment ("DME") to its Medicaid recipients, it has chosen to do so. Mo. Rev. Stat. §

208.152.1(19) (requiring payment for "[p]rescribed medically necessary durable medical equipment [DME]").  In *Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006) the Eighth Circuit Court of Appeals found  that "[b]ecause Missouri has elected to cover DME as an optional Medicaid service, it cannot arbitrarily choose which DME items to reimburse under its Medicaid policy." *Lankford*, 451 F.3d at 511.  The court further held that Missouri is required to have a "meaningful procedure for requesting non-covered items." *Id.* at 512. Thus, if adult diapers are DME, Defendants must follow the rules in *Lankford*. Otherwise, they will be in violation of the Medicaid Act's "reasonable standards" requirement.  *See* 42 U.S.C. § 1396a(a)(17) (requiring state Medicaid plans to "include reasonable standards"); 42 C.F.R. § 440.230(c) ("The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under sections 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.").

Although Missouri's definition of DME is "equipment that can withstand repeated use," Mo. Code Regs. Ann. tit. 13, § 70-60.010,  provider bulletins and provider manuals issued by DSS and MO HealthNet indicate that adult diapers are DME.  A March 2009 provider bulletin titled "Physician and Durable Medical Equipment" [Docs. ## 5-6, 5-7] discusses pre-certification procedures and codes for various incontinence supplies, including "adult sized disposable incontinence product."  [Doc. # 5-6, at 1].  Page 31 of MO HealthNet's "Durable Medical Equipment Manual" outlines criteria for coverage for

"underpads, diapers, briefs and protective underwear/pull-ons."  [Doc. # 5-7, at 1].  A

document entitled "MO HealthNet PA Criteria" outlines new criteria for the approval of

coverage for diapers, pull-ons, and underpads pursuant to Senate Bill 577, which "directs

MO HealthNet to utilize an electronic web-based system to authorize Durable Medical

Equipment."  [Doc. # 5-8, at 1].

All of these documents specifically state that coverage of incontinence diapers are

only for participants between ages 4 through 20 and Defendants therefore argue that

Missouri provides Medicaid coverage of incontinence diapers only for participants ages 4

through 20 because federal law requires it to do so under the EPSDT (Early Periodic

Screening, Diagnosis, and Treatment) Program.  Even so, the EPSDT Program does not

require Defendants to characterize or label incontinence diapers as DME.  That they have

voluntarily done so clearly communicates to the Court that Defendants have already

determined that adult diapers are DME.  Because Missouri's regulations incorporates by

reference all of its policies issued in its provider bulletins and manuals, the Court cannot

ignore Defendants' own representations that adult diapers are DME.  *See* Mo. Code Regs.

Ann. tit. 13, § 70-60.010(1) ("The services and items covered and not covered, the

program limitations, and the maximum allowable fees for all covered services shall be

determined by the Department of Social Services, MO HealthNet Division and shall be

included in the DME provider manual and bulletins, which are incorporated by reference

and made a part of this rule . . . .").

11

The Missouri Medicaid program must cover "[p]rescribed medically necessary durable medical equipment." Mo. Rev. Stat. § 208.152.1(19). Because adult diapers are DME, Defendants must likewise cover all medically necessary adult diapers. Here, prior to issuance of the Preliminary Injunction Order, individuals over age 20 were not allowed to establish medical necessity for incontinence briefs, nor were they allowed to use the State's prior authorization process to verify a medical need for adult diapers. Indeed, despite receiving documentation that Plaintiffs have a continuing medical need for adult diapers, Defendants rejected Plaintiffs' request for coverage based on the reasoning that for adults, "disposable diapers are a personal hygiene item, not a medical item." [*See, e.g.*, Doc. # 5-2].

As the Eighth Circuit Court of Appeals specifically reiterated in *Lankford*, "[w]hile a state has discretion to determine the optional services in its Medicaid plan, a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is both per se unreasonable and inconsistent with the stated goals of Medicaid." *Lankford*, 451 F.3d at 511. Here, adult diapers are non-experimental, medically necessary, and are DME. Thus, the Court finds that if Defendants do not cover medically necessary adult diapers for Medicaid participants over the age of twenty, they are in violation of Medicaid's "reasonable standards" requirement.

## 2. Plaintiffs' Claim Based on the Mandatory Home Health Services Requirement of the Medicaid Act

All Medicaid recipients in Missouri are entitled to "home health services"

including "[m]edical supplies [and] equipment," subject to, at a minimum, an annual review by a physician of participants' needs for such services. 42 U.S.C. §§ 1396a(a)(10)(A); 1396a(a)(10)(D); Mo. Rev. Stat. § 208.152.1(4); 42 C.F.R. §§ 440.70(b)(3), 440.210, 441.15. The parties do not dispute that adult diapers are either supplies or equipment. As such, under the home health services requirement, adult incontinence diapers–whether deemed DME under Missouri regulation–are covered by Medicaid if they are medically necessary. Defendants' blanket policy of deeming adult diapers as "personal hygiene" products for all Medicaid participants over age 20 is in discord with the mandatory federal home health services requirement.

The Court notes that Missouri has been advised by the federal Centers for Medicare & Medicaid Services ("CMS") to revise its current state plan so that it can be in accord with federal requirements not at issue in this litigation. [Doc. # 22-10]. Therefore, if Plaintiffs qualify for home health services in light of these required amendments, Defendants are in violation of the Medicaid Act's mandatory home health services requirement if they do not cover Plaintiffs' medically necessary incontinence diapers.

### 3.    Plaintiffs' ADA and Rehabilitation Act Claims

Due to the "non-medical" status that Defendants' policies have assigned to incontinence briefs to persons over age twenty, Plaintiffs, who live in the community, are not entitled to receive Medicaid coverage of their medically necessary adult diapers

absent the Court's Preliminary Injunction Order.  However, the per diem provided by the

Missouri Medicaid program to those age twenty-one and over who reside in institutional

settings, such as nursing homes, can be used to cover incontinence briefs.  Mo. Code

Regs. Ann. tit. 13, § 70-10.005, Appx.; 70-10.010, Appx. A.  Thus, according to

Plaintiffs, in order to obtain Medicaid coverage of their incontinence supplies, Plaintiffs

must submit themselves to an institution.

Based on this premise, Plaintiffs raised an "integration mandate" challenge under

both the ADA and section 504 of the Rehabilitation Act.  The ADA, 42 U.S.C. §§ 12131-

12134, prohibits public entities from discriminating against individuals with disabilities

by, for example, violating the "integration mandate": "[N]o qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the

Rehabilitation Act applies the same standards to entities that receive federal financial

assistance: "No otherwise qualified individual with a disability . . . shall, solely by reason

of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial

assistance."  29 U.S.C. § 794(a).  "The rights, procedures, and enforcement remedies

under Title II are the same as under section 504."  *Layton v. Elder*, 143 F.3d 469, 472 (8th

Cir. 1998) (citing *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th

14

Cir.1994)). As the Supreme Court held in *Olmstead v. L.C.*, 527 U.S. 581 (1999), public entities are required to provide community-based services to persons with disabilities when (1) such services are appropriate; (2) the affected persons do not oppose community-based treatment; and (3) community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of other persons with disabilities. *Id.* at 607. Persons at risk of institutionalization may make an integration mandate challenge without having first been placed in institutions. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1185 (10th Cir. 2003).

Defendants do not dispute that Plaintiffs meet the criteria outlined in *Olmstead.* Rather, Defendants' only argument against the merits of Plaintiffs' claim is that Missouri's waiver programs are sufficient to prevent forced institutionalization. Plaintiffs, as Medicaid recipients, are "categorically needy." Prior to the Court's Preliminary Injunction Order, Plaintiffs who did not receive support through a waiver program, struggled to pay for their incontinence supplies through a combination of donations from charities and family members. One of the plaintiffs, Ms. Hammond, re-wears used diapers. It is undisputed that if Plaintiffs are ineligible for a waiver program, they must be institutionalized in order to obtain Medicaid coverage of their medically necessary incontinence briefs.

The Court notes that only one of the four Plaintiffs currently receives coverage under a waiver program, despite persistent requests to state agencies and their Medicaid

case managers by the non-receiving Plaintiffs.  Indeed, Defendants have failed to rebut

Plaintiffs' evidence, and fails to show the Court that (1) each Plaintiff is eligible for a

waiver program, and (2) there are available slots in the waiver programs for each

Plaintiff.  Additionally, continued coverage offered under waiver programs are not

guaranteed, and there are caps on enrollment.  Due to these reasons, Defendants have

failed to show that waiver programs are a viable alternative to institutionalization.  *See*

*Lankford*, 451 F.3d at 513 (concluding that plaintiffs had no available procedure to obtain

Medicaid coverage when the purportedly available state process did "not appear to

provide a reasonable opportunity to obtain [coverage]").

     The Court finds that pursuant to *Olmstead*, Defendants are required to provide

Medicaid coverage of incontinence briefs to non-institutionalized adults if they provide

such coverage to institutionalized adults.

## III.    Conclusion

     For the foregoing reasons, the Court finds that Plaintiffs have established the

requirements necessary for a declaratory and permanent injunctive relief.  Accordingly, it

is hereby

     ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. # 32] is

GRANTED.  The Court declares that, notwithstanding Defendants' January 14, 2011

"Notice Concerning Adult Incontinence Briefs," Defendants current policies deeming

adult incontinence briefs "personal hygiene items" for participants over age twenty

violates the Medicaid Act's "reasonable standards" requirement and "home health

services" requirement, and violates the integration mandate of the ADA and section 504

of the Rehabilitation Act.  The Court permanently enjoins Defendants from applying their

unlawful policies, and orders Defendants to establish a fair process, in accord with this

Order and federal law, whereby all adult Missouri Medicaid recipients can obtain

medically necessary incontinence briefs.


                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  June 24, 2011
Jefferson City, Missouri