**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| STEVEN HILTIBRAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10-4185-CV-C-NKL |
| | ) | |
| RONALD J. LEVY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER**

Before the Court is Plaintiff Steven Hiltibran's Motion for Attorney Fees and Costs [Doc. # 47]. For the following reasons, the Court GRANTS the motion in part.

**I.     Background**

Hiltibran brought this action against Director Ronald J. Levy of the Missouri Department of Social Services and Director Ian McCaslin of MO Healthnet Division (collectively, "Levy"), in their official capacities, claiming Missouri was required to provide adult incontinence diapers under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act. The Court granted Hiltibran's preliminary injunction and later granted his motion for summary judgment on this claim.

Hiltibran has moved for attorney's fees and costs, proposing the following "lodestar," or, calculation of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate[1]:

| Name/Org. | Position | Year of JD Awarded | Hours Worked | Hourly Rate | Amount of fees |
|---|---|---|---|---|---|
| LSEM | | | | | |
| Joel Ferber | attorney | 1985 | 443.50 | $350.00 | $155,225.00 |
| Marisa Waldman | paralegal | // | 144.40 | $75.00 | $10,672.50 |
| Paul Hargadon | paralegal | // | 24.40 | $75.00 | $1,830.00 |
| Total | | | $167,727.50 | | |
| Subtotal-5% discount | | | **$159,341.12** | | |
| Kennedy Law Offices | | | | | |
| Tom Kennedy | attorney | 1971 | 20.80 | $350.00 | $7,280.00 |
| Heather Navarro | attorney | 2008 | 45.00 | $200.00 | $9,000.00 |
| Total | | | $16,280.00 | | |
| Subtotal-5% discount | | | **$15,466.00** | | |
| SLU Law Clinic | | | | | |
| John Ammann | attorney | 1984 | 16.50 | $300.00 | $4,950.00 |
| Subtotal-5% discount | | | **$4702.50** | | |
| NHeLP | | | | | |
| Jane Perkins | attorney | 1981 | 90.50 | $350.00 | $31,675.00 |
| Corey Davis | attorney | 2005 | 15.90 | $200.00 | $3,180.00 |
| Total | | | $34,855.00 | | |
| Subtotal-5% discount | | | **$33,112.25** | | |
| **Total Fee Request** | | | **$212,621.87** | | |

Hiltibran also asks for $400 in out-of-pocket costs.

Hiltibran calculated the number of hours worked based on his attorneys' records, billed by the tenth of an hour – rather than by the quarter of hour – in an effort to enhance reliability. Hiltibran did not include in his calculations any hours worked by law students or any hours worked by senior attorney Daniel Claggett. Hiltibran's counsel exercised

---

[1]*See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

billing judgment to account for duplicative time, and reduced all hours by five percent as a safety measure.

Hiltibran calculated the hourly rate using a report from Missouri Lawyers Weekly – produced using 2010 court filings – that the average hourly billing rate for partners in St. Louis law firms was $381. Hiltibran provides several supporting affidavits from Missouri attorneys testifying that Hiltibran's rate calculations were reasonable if not low given his attorneys' experience, the nature of the litigation, and applicable market rates [Doc. # 47-10 at 5, #47-11 at 4, and #47-12 at 4].

Levy does not dispute that Hiltibran is the prevailing party and entitled to some fees. Levy does not dispute Hiltibran's claim for $400 in costs, nor the proposed hourly rate for paralegals. Levy contests the hourly rate of counsel, the total number of billable hours, and an alleged overlap in billing records.

## II.    Discussion

The federal civil rights attorney fees statute allows district courts to award attorney fees to parties prevailing on § 1983 claims, 42 U.S.C. § 1988(b) (2000). Rule 54 authorizes an award of costs, other than attorney fees, also to the "prevailing party." Fed. R. Civ. P. 54(d)(1).

The appropriate starting point for determining the amount of attorney fees is the "lodestar" calculation – the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). Federal courts determine this amount by examining the *Johnson* factors: (1) the time and

labor required; (2) the novelty and difficulty of the questions; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Easley v. Anheuser-Busch*, *Inc.*, 758 F.2d 251, 265 n.25 (8th Cir. 1985) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Parties are expected to exercise "billing judgment" in claiming hours for attorney fees in civil rights actions just as they would for a client in the private sector. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

## A.    Reasonable hourly rate

Levy argues that, under factors (5) and (12), Hiltibran's claimed hourly rates for his attorney fees are excessive. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (internal quotes omitted).

Levy argues that Hiltibran's hourly rates are excessive because they are based on the St. Louis, rather than Jefferson City, market. But the Eighth Circuit has suggested that courts construe "community" expansively both where a case is tried in the state

capitol, *see McDonald v. Armontrout*, 860 F.2d 1456, 1459-60 n.6 (8th Cir. 1988), and

where a case involves the special expertise of non-local counsel. *See Planned*

*Parenthood v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). Levy has not disputed Hiltibran's

evidence that Hiltibran's attorneys are widely known for their special expertise in

Medicaid litigation. Thus, the Court will not limit Hiltibran's attorney fees to Jefferson

City rates.

Levy also argues that Hiltibran's claimed rates are too high because they are based

on general private practice, and not civil rights practice, rates. But the Supreme Court has

observed that Congress "intended that the amount of fees awarded under § 1988 be

governed by the same standards which prevail in other types of equally complex federal

litigation, such as antitrust cases, and not be reduced because the rights involved may be

nonpecuniary in nature." *Blum v. Stenson*, 465 U.S. 886, 893-94 (1984) (internal

alterations omitted). Thus, this argument fails as well.

Levy argues that the Hiltibran's supporting declarations from independent

attorneys stating that the claimed rates are reasonable do not state "a basis showing that it

is a normal rate charged for this type of work." [Doc. # 51 at 13]. The Court simply

disagrees with this characterization, and finds these declarations to be relevant evidence

supporting Hiltibran's rate under the *Johnson* factors. *E.g.* [Doc. # 47-10 at 2]

(declaration of a St. Louis attorney practicing mostly in plaintiff's civil rights litigation

that the claimed rates are "within or below the range of market rates charged by similarly

experienced attorneys in the St. Louis Metropolitan Area for litigation...").

Finally, Levy argues that cases similar to this one suggest that Hiltibran's claimed rate is too high. Each party cites several cases to support its position, and each party has distinguished the bulk of the other party's cases on some ground. For example, Levy cites an ERISA case where the Court reduced a party's claimed attorney fee from $445 an hour to $300 an hour given the attorney's experience in ERISA cases. *Toppins v. Hartford Life and Accident Ins. Co.*, Slip Opinion 2009 WL4728993 at *3 (W.D.Mo. Dec. 4, 2009). But Hiltibran points out that Levy is inconsistent in its position on whether the calculation of attorney fees in ERISA cases are analogous to the calculation of attorney fees in civil rights cases such as this one. In fact, the Eighth Circuit has recognized that "ERISA does not closely correspond with the fee-shifting scheme in the civil rights statutes." *Martin v. Arkansas Blue Cross Blue Shield*, 299 F.3d 966, 971 (8th Cir. 2002). Hiltibran, on the other hand, cites a case awarding the rate of $350 in 2002 to lawyers with comparable experience who challenged a Missouri Medicaid policy. *White v. Martin*, [Doc. # 52-2 at 9]. But in that case, the plaintiffs convinced the court that New York, and not Kansas City, rates were appropriate, and the defendants did not dispute the hourly rate of $350. [Doc. # 52-2 at 8-9]. Ultimately, if these and the other cases cited by the parties establish anything, it is that factor (12) does not favor either Levy's proposed $300 rate or Hiltibran's $350 rate over the other. The Court finds Hiltibran's proposed hourly rates reasonable.

**B.    Reasonable amount of hours**

Levy first argues that Ms. Perkins's claimed hours are unreasonable because she spent a much larger proportion of her total claimed hours preparing the fee request than did any other attorney. This argument depends on the assumption that each attorney should have spent time on the fee request in proportion to the time spent on the underlying case. Hiltibran correctly points out that this assumption is unfounded, and notes that Ms. Perkins took the lead on drafting the fee request on behalf of all attorneys involved. Thus the hours she spent preparing the fee request should be examined independently of the hours she spent on other stages of the litigation.

Nonetheless, the Court agrees that the hours claimed for preparing the fee request are excessive. The same analysis that justifies the hours spent litigating the underlying claim does not apply to hours spent preparing the fee request, which is more administrative in nature. Proper billing judgment thus dictates a substantial reduction in these hours, and the Court reduces by half all hours claimed in preparing the fee calculation, resulting in new totals of 438.25 hours for Mr. Ferber, 15.75 for Mr. Ammann, and 78.7 for Ms. Perkins.

Levy also argues under factor (1) that the number of hours claimed by Hiltibran fails to properly exclude "hours that are excessive, redundant, or otherwise unnecessary." *See Hensley v. Eckhart*, 461 U.S. 424, 434 (1983). Levy argues that the underlying facts were never disputed, that there was no written discovery or depositions, and that there were no hearings other than oral argument for summary judgment. Levy also points out that pre-filing work accounted for 40% of total hours and that briefing for the preliminary

injunction motion took 125.6 hours while summary judgment took 64.8 hours. Levy

argues that the hours spent for summary judgment were excessive in light of the similarity

in the issues between summary judgment and preliminary injunction, but does not

otherwise explain what is inherently unreasonable about the distribution of hours he

describes.

The Court does not find this amount of hours or distribution of hours inherently

unreasonable. Hiltibran convincingly argues that the many hours his attorneys spent

preparing for preliminary injunction and summary judgment motions were justified by

their winning summary judgment and preventing a costly trial. This included the

preparation of "a very detailed Proposed Statement of Undisputed Material Facts." [Doc.

# 52 at 2]. Further, Hiltibran has already discounted all attorney hours by five percent to

account for discrepancies, and has completely excluded hours worked by law students

and the hours spent by Daniel E. Claggett, a senior attorney at Legal Services of Eastern

Missouri.


Levy argues under factor (2) that Hiltibran's claimed hours are unreasonable

because the issue litigated was not particularly novel: "While the specific item, adult

diapers, might have been novel, the applicable law and the legal standard use [sic] by this

Court were not novel or unique." [Doc. # 51 at 8]. Even to the extent that Levy's

restrictive view of "novelty" is the correct one, Levy's description illustrates that the case

was still "difficult" under factor (2). Levy admits that the situation was factually novel,

which necessarily means Hiltibran's counsel were tasked with convincing the Court to apply a particular legal standard that had never been applied to those facts. This would require Hiltibran's counsel, at the least, to research a substantial amount of cases litigated under the relevant legal standard in order to make factual analogies. Proceeding in this way takes more time and attorney expertise than if a case were factually on point, and that is a relevant consideration in determining the reasonableness of the amount of hours claimed by Hiltibran. Thus, Levy's argument on this point is not persuasive.

Although the Court does not necessarily find Hiltibran's claimed hours or his claimed attorney rates unreasonable, the Court doubts whether Hiltibran's attorneys could continue to collect their claimed rate from a private client at their claimed number of hours. The Missouri Lawyers Weekly report relied on by Hiltibran does not specify whether partners were able to collect at their standard rates for every hour worked on a case, even as they surpassed four hundred hours – as did Mr. Ferber in this case. Rather, at some point a private client would begin to expect a sort of volume discount on their fees, and Hiltibran's attorneys would have to reduce their hours as a matter of billing judgment. This is especially true here, both because of the considerable overlap between Hiltibran's motions for preliminary injunction and his motion for summary judgment, and because of the national economic climate, which has led to increased client resistance to large attorney fees. Rather than reducing any particular claimed hours in Hiltibran's lodestar, the Court discounts these number by an extra fifteen percent, resulting in a twenty percent total discount to account for proper billing judgment.

## III. Conclusion

Accordingly, it is hereby ORDERED that Hiltibran's Motion for Attorney Fees

[Doc. # 47] is GRANTED.  The Court awards in favor of Hiltibran and against Levy

$174,222 in attorney and paralegal fees, plus $400 in other costs, for a total of $174,622.


                                                    s/ NANETTE K. LAUGHREY
                                                   NANETTE K. LAUGHREY
                                                   United States District Judge

Dated:   October 20, 2011
Jefferson City, Missouri